UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MICHAEL L.[1], | ) |
|     Plaintiff, | ) ) ) |
| v. | ) CIVIL NO. 4:22cv50 ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) ) |
|     Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act. Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C.

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

§423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, supra at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2. The claimant has not engaged in substantial gainful activity since May 6, 2019, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: dysphonia, gastroesophageal reflux disease (GERD), hearing loss, and myasthenia gravis (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets

2

|  |  |  |
|---|---|---|
|  |  | or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). |
|  | 5. | After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can frequently handle and finger. He can frequently climb ramps and stairs, frequently climb ladders, ropes, or scaffolds, as well as frequently balance, stoop, kneel, crouch, and crawl. He is limited to working environments that have no more than a moderate noise level. He is limited to tasks that require no more than frequent speaking. |
|  | 6. | The claimant is unable to perform any past relevant work (20 CFR 404.1565). |
|  | 7. | The claimant was born on January 2, 1963 and was 56 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563). |
|  | 8. | The claimant has at least a high school education (20 CFR 404.1564). |
|  | 9. | Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
|  | 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)). |
|  | 11. | The claimant has not been under a disability, as defined in the Social Security Act,from May 6, 2019, through the date of this decision (20 CFR 404.1520(g)). |

(Tr. 12-19).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed his opening brief on March 10, 2023.  On June 21, 2023 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on July 20, 2023. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled.  *See*

*Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).   In the present case, Step 5 was the determinative inquiry.

In support of remand, Plaintiff argues that the ALJ erred in assessing the RFC.  When assessing a claimant's RFC, the ALJ is required to explain how he reached his conclusions with specific evidence from the record to allow a reviewer to trace the path of his reasoning from the evidence to the limits assessed. *See* SSR 96-8p; *Jarnutowski v. Kijakazi*, 48 F.4th 769, 775 (7th Cir. 2022). Plaintiff contends that the ALJ failed to build an accurate and logical bridge between evidence of myasthenia gravis-related fatigue and his finding for medium work, which involves the lifting and/or carrying of 50 pounds occasionally and 25 pounds frequently, six hours of standing and/or walking, and in this case, frequent climbing of ladders, ropes, scaffolds, ramps, stairs, and frequent postural maneuvers including crouching and crawling. (Tr. 14-15). *See* 20 C.F.R. § 404.1567(c); SSR 83-10 (noting that "the considerable lifting required for the full range of medium work requires frequent bending-stooping").

Plaintiff contends that the ALJ's examination of Plaintiff's fatigue was internally inconsistent,

as he noted that Plaintiff "generally denied feeling fatigued, weak, or short of breath" (Tr. 15), but also explicitly stated that he considered symptoms of fatigue and weakness in limiting him to medium work. (Tr. 17). Plaintiff points out that it is not evident whether the ALJ credited or discredited Plaintiff's allegations of these symptoms. Plaintiff correctly notes that assuming the ALJ credited those symptoms, he was then required to set forth a "logical explanation" of the effects of fatigue and weakness on Plaintiff's ability to work. *See* SSR 96-8p. No such explanation was provided here, as the ALJ merely stated that "based on the foregoing," and "in consideration" of his symptoms of fatigue and weakness, he could sustain the rigors of medium work. (Tr. 17). *See Allensworth v. Colvin*, 814 F.3d 831, 833 (7th Cir. 2016) (ALJ's RFC finding not supported by substantial evidence where she limited the claimant to simple work due to sleep apnea, without tying that condition to the complexity of work he could handle).

Plaintiff acknowledges that the ALJ noted that Plaintiff "generally denied feeling fatigued, weak, or short of breath." (Tr. 15). The ALJ cited three exhibits in support of this finding: Exhibit 8F, page 14, and Exhibit 9F, pages 5 and 13. (Tr. 15). Two of these exhibits are duplicative and refer to a primary care visit from November 22, 2019, where Plaintiff denied fatigue. (Tr. 486, 556). The third exhibit refers to a December 2019 visit for blood pressure medication refills, where he also denied fatigue. (Tr. 548). Thus, the ALJ only cited two instances of denials in a record in which Plaintiff routinely complained of fatigue, weakness, and shortness of breath. (Tr. 392, 630, 646, 650, 648, 670, 683-84, 797). For example, Plaintiff reported fatigue and muscle soreness to Dr. Mammoud, with a difficult time standing up from the floor and ascending stairs. (Tr. 650). He later reported shortness of breath after climbing stairs, voice fatigue, and shortness of breath with mild exertion, such as going to stand to put on a shirt. (Tr. 646, 683). The Court agrees with Plaintiff that the ALJ's conclusion that Plaintiff "generally denied" fatigue, weakness, and shortness of breath was

5

factually inaccurate. This inaccuracy leaves open the question of whether the ALJ weighed the evidence in the first place, as he did not evaluate these significant complaints.

Additionally, the ALJ failed to acknowledge Plaintiff's hearing testimony regarding these symptoms, which was again a significant omission given his statements about the effects of fatigue and weakness, such as needing to nap for 30-40 minutes at a time (Tr. 48), shortness of breath from tying his shoes and walking to the front door (Tr. 51), cramping of muscles in the upper extremities (Tr. 630), inability to walk more than 500 to 600 feet without resting (Tr. 51), and inability to lift more than 15 pounds for "not very long" on a good day. (Tr. 51). *See Plessinger v. Berryhill*, 900 F.3d 909, 916 (7th Cir. 2018) (reversing where the ALJ failed to explain why he disbelieved the claimant's statements that he could not walk beyond short distances and had to lie down several times during the day to manage pain). The RFC finding "must be based on all of the relevant evidence in the case record," such as medical signs and laboratory findings, reports of daily activities, lay evidence, and effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment. *See* SSR 96-8p. While the ALJ acknowledged some of Plaintiff's reported symptoms from function and daily activity reports (Tr. 15), he mischaracterized the evidence in doing so: whereas the ALJ found that Plaintiff alleged being able to lift "up to 40 pounds" (Tr. 15), he actually stated that he could lift less than 40 pounds, and was short of breath when walking or climbing stairs. (Tr. 239). Absent in the ALJ's decision is a discussion of how the evidence reflected an ability to lift and/or carry 50 pounds for up to 1/3 of the workday, lift and/or carry 25 pounds for up to 2/3 of the workday, stand and/or walk for up to six hours a day, and frequently perform postural maneuvers. (Tr. 14-15). The ALJ did not explain how the record supported the specific limitations ascribed to Plaintiff. (Tr. 15).

Moreover, the ALJ did not cite evidence that suggested Plaintiff possessed the capacity for

6

medium work. Findings of normal lungs and gait, as cited by the ALJ (Tr. 15), do not indicate an ability to lift 50 pounds for over two hours per day. 20 C.F.R. § 404.1567(c). No physician measured Plaintiff's ability to lift and carry weight, and the Agency staff who evaluated his claim at the initial and reconsideration level found a consultative examination to be unnecessary and provided no reasoning behind that decision. (Tr. 68, 90).

Also, while the ALJ found the State agency opinions to be persuasive (Tr. 16-17), the State agency physicians, similarly, cited no evidence indicating an ability to lift and/or carry 50 pounds, and never examined Plaintiff. (Tr. 73, 94). In fact, both of the State agency physicians, when asked to provide explanations for their RFC opinions, only summarized the medical evidence and Plaintiff's written statements. (Tr. 74-76, 96-99). The ALJ's comment that these physicians "considered the claimant's hearing loss and symptoms associated with myasthenia gravis together with his reports of daily living" (Tr. 16) merely reflects that they reviewed and summarized the record; their analysis, like the ALJ's, does not illuminate how the evidence fit their conclusions. As such, those opinions do not constitute substantial evidence supporting the medium work RFC. *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) (Substantial evidence standard not satisfied where the ALJ fails to "build an accurate and logical bridge from the evidence to her conclusion").

The ALJ's RFC finding departed from the State agency opinions in three ways: first, in finding that Plaintiff could tolerate no more than a moderately noisy work environment; second, in limiting him to frequent speaking; and third, in finding that he could frequently handle and finger. (Tr. 14-15, 73-74, 94-95). It is unclear why the ALJ did not further limit Plaintiff's capacity to lift and carry weight, since he disagreed with the State agency physicians in several respects and also acknowledged, in discussing their opinions, that Plaintiff experienced occasional muscle weakness and numbness. (Tr. 17). The ALJ did not build a logical bridge between his finding that the State

7

agency opinions were persuasive as to Plaintiff's lifting and carrying capacity, but not his abilities to lift, carry, handle, and finger. (Tr. 17). *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (An ALJ must build an "accurate and logical bridge" from the evidence to his conclusions so the reviewing court can "assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review").

In addition to testimony indicating an ability to lift more than 15 pounds for brief periods on a good day (Tr. 51), the evidence reflects complaints of cramping of muscles in the upper extremities, discomfort, and numbness in the hands; he experienced some weakness in his extremities in the afternoon, especially if he had been working in the yard. (Tr. 630). On June 19, 2020, Dr. Mammoud observed decreased pinprick sensation across the median nerve distribution, and positive Phalen's and Tinel's signs on the right, which, along with numbness and muscle cramps in the fingers, were indicative of carpal tunnel syndrome. (Tr. 632-33). He reported muscle soreness at a subsequent visit (Tr. 650), and, as discussed above, indicated shortness of breath climbing stairs (Tr. 650) and difficulty standing from sitting or kneeling positions. (Tr. 656). Plaintiff points out that myasthenia gravis is a condition known to produce muscle weakness that typically improves with rest, and this weakness is manifested when the individual is most active. Individuals with muscle weakness related to the condition often feel strongest at the start of the day, and weakest at the end of the day, with symptoms including difficulty speaking, swallowing, or chewing, difficulty walking, and limb weakness.  The intensity of muscle weakness often changes from day to day. The medical literature is consistent with Plaintiff's condition, which resulted in both good and bad days (Tr. 48, 833), and progressive weakness in the afternoon. (Tr. 630, 797). It is unlikely that Plaintiff could sustain the medium RFC ascribed to him by the ALJ, given symptoms of weakness, fatigue, and shortness of breath (Tr. 392, 630, 646, 650, 648, 670, 683-84, 797), as

well as difficulty with postural movements, such as ascending stairs (Tr. 646, 670). The ALJ's failure to substantiate the RFC limitations with evidence renders his decision unsupported by substantial evidence. *See Mandrell v. Kijakazi*, 25 F.4th 514, 519 (7th Cir. 2022) (reversing where the ALJ's RFC finding failed to capture the claimant's abilities in light of her good and bad days stemming from PTSD). Thus, remand is warranted for a proper assessment of Plaintiff's RFC.

Next, Plaintiff argues that the ALJ failed to analyze the intensity, persistence, and limiting effects of Plaintiff's fatigue, weakness, and shortness of breath. Plaintiff points out that the ALJ failed to make a determination of whether Plaintiff could reasonably be expected to experience symptoms and how those symptoms would affect his capacity for medium work.

Plaintiff's wife completed a third-party function report on January 15, 2020, in which she described Plaintiff's functioning and daily activities. (Tr. 224-32). Mrs. L stated that, every morning, her husband awoke to some form of pain, in the head/neck, hands/arms, or legs/feet; he choked during his sleep; he could perform chores with breaks, depending on his fatigue; he suffered from social anxiety and did not wish to be around people; his medications for myasthenia gravis caused nausea and anxiety; he experienced shooting pain in his neck and all over his body, accompanied by overwhelming fatigue. (Tr. 224-32). The ALJ found Mrs. L's remarks "generally corroborative" of her husband's, but determined that her statements appeared "to be based on casual observations, rather than objective medical and psychological testing." (Tr. 17). As a result, the ALJ found that her statements did not outweigh "the accumulated medical evidence regarding the extent to which the claimant's limitations can reasonably be considered a result of his medically determinable impairments." (Tr. 17). The ALJ provided no analysis of the contents of Mrs. L's report, other than to state that her statements were generally supportive of Plaintiff's. (Tr 17). The ALJ did not point to any inconsistencies between her reports and the medical evidence, and did not indicate which

statements he accepted and which he rejected. *See Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) ("The [ALJ] should have made clear whether he believed the fiancee's testimony or not, or which part he believed, or whether he had no idea how much of what she said was worthy of belief"). By definition, third-party reports are based on casual observations, rather than objective testing; the ALJ did not point to any objective evidence suggested that Mrs. L was inaccurate in reporting Plaintiff's daily activities, symptoms, and limitations. Plaintiff contends that, had the ALJ evaluated the contents of Mrs. L's report and evaluated the consistency of her statements with the medical evidence, he may have found it probative of Plaintiff's inability to sustain medium work.

Additionally, he ALJ did not evaluate Plaintiff's allegations of side effects from his medications. According to SSR 16-3p, the Agency uses several factors in evaluating the intensity, persistence, and limiting effects of the individual's symptoms, including "the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms." Here, Plaintiff testified to debilitating side effects from his medications (Tr. 44-45), and in function reports, alleged diarrhea, gas, frequent bowel movements, frequent and urgent urination, and cramps from Mestinon (Tr. 264, 274-75, 306), dizziness, urgent urination, anger, and agitation from Prednisone (Tr. 264, 274-75) and frequent urination from Amlodipine. (Tr. 306). Medical records also reflect complaints of side effects: on June 19, 2020, he informed Dr. Mammoud of stomach upset with Mestinon (Tr. 630), and on June 19, 2021, he stated that he took statins in the past, but these caused side effects of depression and mood swings. (Tr. 814). Because the ALJ did not address this evidence, the ALJ did not comply with the ruling.

Plaintiff also notes that the ALJ failed to address his long, consistent work history with strong earnings. The record reflects that Plaintiff was a professor of aviation technology at Purdue University, from August 1996 to May 2019, where he taught in both laboratory and lecture

10

environments, and presented at conferences and published books. (Tr. 212). He earned upwards of $75,000 annually from 2016 to 2019, and over $100,000 in 2018. (Tr. 194-95). While an ALJ is not statutorily required to consider a claimant's work history, an individual with a strong work history is "entitled to substantial credibility when claiming an inability to work because of a disability." *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016), citing *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015). In this case, Plaintiff suffered from a slowly progressive disease and worked as long as it was feasible for him to do so. (Tr. 44-45, 52-53). While there is no specific requirement that the ALJ discuss work history, in the present case it certainly bolsters Plaintiff's credibility.

For all of the foregoing reasons, the Decision must be remanded.

## Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby REVERSED and REMANDED for further proceedings consistent with this Opinion.

Entered: July 28, 2023.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court